UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMMEX INCORPORATED,

                Plaintiff,

                                    Case No. 08-CV-13120

vs.

                                    HON. GEORGE CARAM STEEH

JOHN DURANT, et al.,

                Defendants.

_____/

ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS [DOC. # 10]

FACTUAL BACKGROUND

Plaintiff brings the present lawsuit against John Durant, William Morandini and certain unknown agents ("John Doe defendants") of the United States Bureau of Customs and Border Protection ("Customs"). Plaintiff alleges that the defendants engaged in a calculated course of conduct that violated the clearly established constitutional rights of Ammex under the Export Clause of the United States Constitution. Plaintiff contends that the unlawful conduct began in 1994 when defendants "acted unlawfully in prohibiting Ammex from selling duty-free gasoline and diesel fuel . . ." Ammex, Inc. v. U.S., 116 F.Supp.2d 1269, 1276 (CIT 2000) ("Ammex CIT I"), and continued until 2005 when the Federal Circuit Court of Appeals held that Defendants' conduct was "an abuse of discretion." Ammex, Inc. v. U.S., 419 F.3d 1342, 1346 (Fed. Cir. 2005).

Defendant Durant is the former Director of the Commercial Rulings Division of Customs and defendant Morandini is the former District Director of Customs.  The John Doe defendants are current and/or former employees of Customs, whose identities have not yet been ascertained.

Ammex operates a "sterile" U.S. Customs Class 9 bonded warehouse, commonly known as a duty-free store or duty-free sales enterprise.  The designation "sterile" means that the physical design and operation of the facility guarantees the exportation of products sold therein.  The store is located on West Lafayette Street in Detroit, Michigan, adjacent to the Ambassador Bridge connecting the United States and Canada.  Customers entering Ammex's facility have necessarily proceeded beyond the "point of no return" exiting from the United States.

As a duty-free sales enterprise, Ammex is permitted to sell for export certain goods "duty-free" to customers who transport those goods directly to Canada after leaving Ammex's store.  On January 24, 1994, Ammex requested authorization from Customs to sell motor fuel on a duty-free basis.  On March 23, 1994, Morandini requested guidance from the Customs Office of Regulations and Rulings.  On June 27, 1994, Durant issued a Customs Internal Advice holding that "Duty-free gasoline and diesel fuel for automobiles may not be sold . . . at duty-free store . . . ."  As a result, Morandini withheld approval of Ammex's request to sell motor fuel duty-free.

Ammex's counsel sought administrative reconsideration via letters to Durant dated September 8, 1995, April 19, 1996, and July 22, 1997.  On February 12, 1998, Durant issued his refusal to reverse course and continued to deny Ammex's request to sell motor fuel on a duty-free basis.  Ammex then turned to the courts for relief.

2

Ammex challenged Durant's determination in the Court of International Trade ("CIT").  On August 25, 2000, the CIT held that federal law permits Ammex to sell motor fuel duty-free from the Ammex facility.  Ammex CIT I, at 1275-76.  Pursuant to Ammex CIT I, Customs authorized the sale of duty-free motor fuel by Ammex on September 5, 2000.

In October 2000, Ammex sent a letter to Customs confirming that the duty-free motor fuel sold at the Ammex facility was tax free.  Customs forwarded Ammex's request to the Internal Revenue Service ("IRS").  The IRS issued a non-binding informational letter stating that § 4081 of the Internal Revenue Code "imposes" a tax on the importation of gasoline and diesel fuel.  On June 1, 2001, Durant reversed course when he issued a "Proposed Revocation of Letter Relating to Gasoline and Diesel Fuel from A Class 9 Customs Bonded Warehouse . . . ."  On November 1, 2001, Durant formally revoked Ammex's authorization to sell motor fuel duty-free.

The revocation was based on a distinction in the Internal Revenue Code between an "imposed" tax and an "assessed" tax.  Plaintiff contends that Durant's revocation was arbitrary, capricious, and an abuse of discretion because he never determined whether any tax was actually assessed on Ammex's fuel.

Ammex challenged the revocation by pursuing contempt proceedings against Customs on the basis of the CIT's decision in Ammex CIT I.  The CIT denied Ammex's motion for an order to show cause because Customs' stated rationale for the revocation differed from the rationale relied upon in Ammex CIT I.  Ammex, Inc. v. U.S., 193 F.Supp.2d 1325 (CIT 2002) ("Ammex CIT II").  The Federal Circuit affirmed the CIT's

3

opinion in <u>Ammex, Inc. v. U.S.</u>, 334 F.3d 1052 (Fed. Cir. 2003) ("<u>Ammex CIT II</u>
<u>Appeal</u>").

Ammex next filed a lawsuit challenging the revocation.  The CIT held that "it was
error for Customs to issue the Revocation. . . ."  <u>Ammex, Inc. v. U.S.</u>, 341 F.Supp.2d
1308, 1302 (CIT 2004) ("<u>Ammex CIT III</u>").  The CIT held that:

> Customs should have acquired unambiguous information specific to
> Ammex's fuel on the question of whether such fuel had in fact been
> assessed any taxes. . . . The court cannot uphold a Revocation Ruling
> based on a nonbinding informational, general letter from the IRS bearing
> no specifics pertaining to Ammex's situation.  To do so would be to ratify a
> clear error of judgment.

<u>Id</u>. at 1314.  The Federal Circuit affirmed the decision of the CIT on August 15, 2005,
holding that Custom's decision to revoke Ammex's authority to sell duty-free gas should
have followed a determination that a tax had been assessed on Ammex's gas.  <u>Ammex,</u>
<u>Inc. v. U.S.</u>, 419 F.3d 1342 (Fed. Cir. 2005) ("<u>Ammex CIT III Appeal</u>").  Customs did not
appeal the decision of the Federal Circuit, which, in practical terms, allowed Ammex to
sell duty-free gas.

In a collateral case, Ammex sued the IRS seeking a tax refund on taxes it paid
on gas sold from its same duty-free store.  <u>Ammex, Inc. v. U.S.</u>, 367 F.3d 530 (6th Cir.
2004) ("<u>Ammex Tax Appeal</u>").  Ammex had purchased gas from a supplier who passed
along federal excise taxes whenever it sold gas to Ammex.  Ammex brought suit against
the IRS in federal district court (before this Judge) to recoup the amount its supplier
charged it for the excise taxes, claiming that the excise taxes it paid violated the Export
Clause of the Constitution as well as the Internal Revenue Code.

The Sixth Circuit affirmed Judge Steeh's decision when it held that Ammex lacked standing to pursue a claim under the Export Clause, given that the IRS never collected any tax from Ammex.  Ammex Tax Appeal, 367 F.3d at 533-34.  The Sixth Circuit also held that Ammex was not an *exporter* under federal law, specifically rejecting Ammex's argument that because it was a duty-free sales enterprise it was therefore an *exporter* under federal law.  Id. At 535-36.  The Sixth Circuit explained that "a duty-free store does not itself export, but rather sells duty-free goods for export *by someone else* (i.e., a customer)".  Id.

Ammex's complaint in this case arises from defendants' denial of Ammex's request to sell motor fuel duty-free in 1994, and the subsequent revocation of authority to sell such fuel duty-free.  Ammex alleges that, as officers and agents of the federal government, defendants acted under color of federal law in denying Ammex's request, and in subsequently revoking Ammex's authorization to sel motor fuel duty-free.  As a result, Ammex avers that it was deprived of its constitutional right under the Export Clause and the Fifth Amendment to sell motor fuel duty and tax-free from 1994 to 2005, resulting in more than $75,000 in damages.

<u>STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)</u>

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's recent articulation of the Rule 12(b)(6) standard in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 127 S. Ct. 1955, 1964-65 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.   To survive a Rule

5

12(b)(6) motion for dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. (citing Bell Atlantic, 127 S. Ct. at 1965).

ANALYSIS

Ammex's complaint purports to state a *Bivens* claim under the Export Clause and the Fifth Amendment's Due Process Clause. Bivens v. Six Unknown Named Agents of Federal Bureau of Nartcotis, 403 U.S. 388 (1971) established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Carlson v. Green, 446 U.S. 14, 18 (1980). The threshold question in a *Bivens* case is whether a defendant's conduct violated a constitutional right.

Defendants filed this motion to dismiss, asserting several problems with Ammex's complaint. First, defendants argue that Ammex's claims are barred by the applicable statute of limitations. Second, defendants contend that Ammex has no right under the Export Clause or the Due Process Clause of the Constitution which are relevant to this case. Third, Ammex cannot identify any deliberate indifference on the part of defendants that could overcome defendants' qualified immunity. Fourth, a *Bivens* claim is barred by res judicata and collateral estoppel because Ammex could

6

have but failed to raise such a claim in its prior litigation concerning the same conduct at issue in this case.

I.  Cause of Action Under *Bivens*

Ammex was able to compel Customs to comply with the law via administrative and judicial processes, but there is no such process available for remedying the damages incurred during the time defendants unlawfully denied Ammex the authority to sell fuel duty-free.  Ammex alleges that, because of defendants' wrongful conduct, Ammex paid federal and state motor fuel taxes through its suppliers and has not been successful in recouping all of the tax paid.  State and Federal motor fuel taxes are imposed upon motor fuel so that the users of the motor fuel pay their share of the cost of constructing and maintaining the roads and highways on which they travel.  The motor fuel sold by Ammex was not destined for use on roads and highways in the United States, and Ammex did not pass on those taxes to its customers.  Ammex's complaint purports to state *Bivens* claims under the Export Clause, and alternately under the Fifth Amendment's Due Process Clause, because Ammex allegedly has no other avenue to recoup the taxes it has paid.

A.  Export Clause

The Export Clause of the United States Constitution provides: "No Tax or Duty shall be laid on Articles exported from any State."  U.S. Const. Ar. I, §9, cl. 5.  The duty-free statutes, 19 U.S.C. §§ 1555, 1557, control the operation of Ammex's duty-free store and require that merchandise sold by it be exclusively for exportation, and no tax be collected or assessed pending exportation, and that any duty collected prior to exportation shall be refunded upon exportation.  Ammex claims defendants violated its

7

Export Clause right by initially denying its request for authorization to sell duty-free gas, and by later revoking its authorization to do the same.

A *Bivens* remedy is available where there are "'no special factors counseling hesitation in the absence of affirmative action by Congress' and 'no explicit congressional declaration' that money damages may not be awarded." Schweiker v. Chilicky, 487 U.S. 412 (1988) (quoting Bivens, 403 U.S. at 396-97).

The Export Clause has been interpreted to provide that no duty or tax shall be assessed on goods in export transit. See U.S. International Business Machines Corp., 517 U.S. 843, 863 (1996). The Federal Circuit recognized that the framers of the Constitution intended the Export Clause to provide claimants with a right to be paid money damages in the event the government imposed a tax upon goods in the stream of exportation. "The Framer's decision to phrase the Export Clause in unconditional language serves to free exports from such burden . . . and the recognition of a monetary remedy furthers that purpose." Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1374-75 (Fed. Cir. 2000) (citations omitted).

Ammex has pled a viable cause of action under *Bivens* based on the Export Clause.

B.  Due Process Clause

Having found that Ammex's *Bivens* claim may be based on the Export Clause, the Court need not address the validity of Ammex's claims for violation of its rights under the Due Process Clause of the Fifth Amendment.

II.  Qualified Immunity

Qualified immunity is an affirmative defense raised by defendants.  It is the plaintiff's burden to prove that the defendant government officials are not entitled to qualified immunity in this case.  Ciminillo v. Streicher, 434 F.3d 461, 466 (6th Cir. 2006) (citation omitted).  To evaluate the merits of a qualified immunity defense, the Court engages in a two-step analysis.  The first inquiry is whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The second inquiry is to determine whether the right asserted to have been violated was clearly established.  Id. at 201.

The Court has already determined that Ammex has alleged violations of its constitutional rights under the Export Clause of the United States Constitution.  Ammex alleges that its rights were clearly established under the "plain and simple text of the Export Clause, and the prohibition found in the Export Clause is confirmed in the duty-free statutes Defendants enforced and administered."

For a right to be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Ciminillo v. Streicher, 434 F.3d 461, 468 (6th Cir. 2006) (citations omitted).  The Sixth Circuit has held that "[t]o determine whether a right is 'clearly established,' we must first look to decisions of the Supreme Court, then to decisions of this Court and courts within this Circuit, and last to decision of other circuits."  Id. (citation omitted).  The only authority Ammex points to in support of its clearly established right to sell fuel duty-free is the text of the Export Clause and the duty-free statutes.  Where neither the Supreme Court nor the Sixth Circuit Court of Appeals, nor

9

any court for that matter, has weighed in on the issue, a particular right cannot be said to be clearly established.

Qualified immunity is overcome only where "a reasonable public official should have known that the alleged misconduct violated [a] right." Geurcio v. Brody, 911 F.2d 1179, 1184 (6th Cir. 1990).

> [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Wilson v. Layne, 526 U.S. 607, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)).  Durant and Morandini, the defendant Customs officials, made their decision to revoke Ammex's authorization to sell duty-free gas in reliance on a letter from the IRS. The Federal Circuit stated that Customs' decision to revoke Ammex's authority to sell duty-free gas was reasonable because of the IRS's guidance.  Ammex CIT II Appeal, 334 F.3d at 1058.  In addition, defendants revoked Ammex's authority in a procedurally transparent and open way, following Customs' published notice.  Discretion is given to Durant and Morandini by the Tariff Act which they interpreted.

The Court of International Trade stated that this case presented "unique facts" and "unique circumstances," and this Court agrees.  This is not the type of case where any reasonable official would know he or she was violating a clearly established right.

<u>CONCLUSION</u>

The Court finds that the defendants are entitled to qualified immunity from the allegations made by Ammex.  Defendants' motion to dismiss is GRANTED due to their qualified immunity from suit.  The Court need not reach defendants' arguments of

10

statute of limitations, collateral estoppel and res judicata due to its findings regarding qualified immunity.

Dated:  April 23, 2009

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 23, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---